Brady, J.
In 1883 the defendants were importing matches from Sweden and Norway, and a fire having occurred on *834 one of the Thingvalla line of steamers in which the matches were shipped, they telegraphed the plaintiffs at Christiana, on the twentieth of November of that year as follows: “Gagged—make firm immediate contract with Wilsons all. you can ship for eight months.”
On the twenty eighth November the answer came. “Wilsons freight 27—6 conditionally.' Leave me to arrange best possible. Wire.” To which the defendant answered on the following day “Arrange best possible.”
The term “gagged,” according to the code used by the-parties, meant “200 cases of the brand known as Bear,”" and “ Wilsons ” meant Wilsons steamship company’s line of steamers plying between Norway, Hull and New York. The contract made with the Wilson line contained this clause: “ 9th. Shippers can cancel this contract if import duty in America gets prohibited, or if the import duty is. raised there.”
The plaintiffs proceeded to manufacture in accordance-with the cablegram, and the defendants refusing to receive the whole product, commenced this action to recover a proper compensation.
The investigation developed several cablegrams and a. wealth of correspondence which embraced other subjects than the cablegram of the 20th of November (supra), and which it may be said were not wholly germain to the subject which it originated. These various elements were, however, presented in a masterly manner by the justice-presiding at the trial in his charge, and the jury fully, correctly and clearly instructed not only upon the chief issue, namely, whether a contract was made by the parties as indicated by the cablegram of November 20th, but also upon the rule of damages, if that issue were decided in favor of the plaintiffs. Notwithstanding, as suggested by the shipping clause in reference to a change of duties to be made by an impending treasury regulation, of which the defendants were advised prior to the 20th November, and which they were evidently apprehensive might be enforced, and hy which the importation of matches would be made profitless, if not disastrous, they did not protect themselves against it by proper provision in the contract as well, and did not in fact arrest the manufacture of the matches, under the contract by proper notice.
They seemed to have assumed that the contract would be regarded as provisional from its restricted or conditional form as to shipping, and that when the shipping-stopped, the manufacture would also stop. The apprehended, objectionable duty was for a time sought to be enforced, which induced them to arrest the shipping of the matches, although proceedings were taken which resulted *835 in its rejection and the restoration of the prior import. The defendants contended that they did not make any absolute engagement for eight months, and arrayed a number of facts and circumstances to sustain that attitude, and especially that after the cablegram of November 20 was despatched the plaintiffs sent a written contract for thirteen months, which was not signed by them, or agreed to, and which they urged as utterly inconsistent with the existence of that relating to eight months only. It was also contended that no matches were shipped after the delivery of the 200 cases first ordered was made, but the plaintiffs responded by saying that the defendants neglected and refused, though requested to send shipping orders. They urged also that the plaintiffs did not accept their proposition for eight months, and that as they did not accept the plaintiffs counter proposition extending the period to thirteen months, the whole matter was dropped. These several views were all mattors for disputation before the jury, and were there, no doubt, elaborated with ability and skill. They bore upon the main issue, to bo disposed of by the cablegrams, correspondence and the acts of the parties and their agents in connection with them.
It must be observed, however, that the cablegram of the 20th of November not only ordered matches, but directed the plaintiffs to make a shipping contract with the Wilson line of steamers for their transportation, a duty accepted and discharged as the responding cablegrams demonstrate.
The defendants undoubtedly considered the order to manufacture as one in its nature imperative and to be accepted as matter of course by the plaintiffs with whom they had dealt, otherwise why direct them to make a contract for all that could be shipped for eight months? Can there be any doubt that the plaintiffs, having made the contract of shipping, bound themselves to. make the, matches?
It cannot, and the effort to extend the time to'thirteen months must be regarded as a new project not entertained by the defendants, and not therefore further urged by the plaintiffs.
It was proposed, but not accepted, and then the eight months project was carried out by manufacturers, for which it called.
It cannot be said here that there are no facts and circumstances tending to establish the correctness of the defendants denials and contentions, but it is to settle such disputes with evidence, pro and con, that the aid of juries is invoked—a tribunal for which, though much abused, I entertain the highest respect. They may err, and doubtless do, but the instances are rare in comparison with those *836 in which they do not, and human institutions without infirmities and imperfections are few and far between.
With the facts and circumstances which distinguish f.bi« controversy in view, it cannot be said that the finding of the jury is either without evidence to sustain it, or that it is against the weight of evidence. The chief exceptions relate to the interrogatories, the answers to which were not as full, and therefore not as satisfactory as they should have been. This is to be noted particularly of the response to the eighteenth interrogatory on behalf of the plaintiffs put to Mr. Lind, and in reference to and in anticipation of which the sixth cross interrogatory was framed. For example, Mr. Lind was asked for an account of the sales of matches made on defendants’ account, and in expectation that one would be appended, the defendants asked to whom the matches were sold, at what prices, at public or private sale, in order to itemize the account beyond peradventure. No account was given such as asked for, and the defendants urged for that reason that the answer to the eighteenth interrogatory should be rejected. In all fairness, as the plaintiffs witness, and who was the plaintiff, in part, at least, was under examination, the account should have been appended and the cross-interrogatory fully answered. But the rule seems to be settled that if the answers are not satisfactory, the motion must be to suppress or correct. Wright v. Cabot, 89 N. Y., 570, is decisive of the question.
This rule applies to all kindred exceptions herein The conclusion arrived at, therefore, after a thorough consideration of the record is that the verdict of the jury settled the liability of the defendants, and they must bear the burden which it imposes upon them, as no rule of law was violated during the trial, and there consequently exists no •reason for interfering with the judgment.
^Judgment affirmed, with costs.
Van Brunt, P. J., and Daniels, J., concur.